UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22766-Civ-WILLIAMS/TORRES

DIANA FLOREZ,

    Plaintiff,

v.

WORKFORCE SOLUTION STAFFING, LLC
*et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'
CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for partial summary judgment filed by Diana Florez ("Plaintiff" or "Florez") and Martha De La Cruz ("Ms. De La Cruz") and Fernando De La Cruz ("Mr. De La Cruz," and collectively with Ms. De La Cruz, "Defendants"). Defendants' motion seeks judgment in their favor on Plaintiff's claims for retaliatory termination (Counts VII-IX). [D.E. 32]. Plaintiff's motion seeks judgment on the following issues: 1) FLSA coverage; 2) Defendants were "employers" under the Fair Labor Standards Act ("FLSA"); 3) Plaintiff was an "employee" under the FLSA; 4) Defendants violated the FLSA's minimum wage provisions; 5) Plaintiff was not exempt from overtime wages for part of her employment; and 6) Defendants are not entitled to any set offs to reduce damages sought by Plaintiff as a matter of law. [D.E. 32].

1

Defendants filed their response to Plaintiff's motion on April 23, 2021 [D.E. 34] to which she replied on April 30, 2021 [D.E. 38]. Plaintiff filed her response to Defendants' motion on April 23, 2021 [D.E. 36] to which they replied on April 30, 2021 [D.E. 39]. Therefore, the motions are now ripe for disposition.[1] After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, Defendants' partial motion for summary judgment should be **GRANTED,** and Plaintiff's partial motion for summary judgment should be **GRANTED in part** and **DENIED in part**.

## I.   *FACTUAL BACKGROUND*

This FLSA action involves alleged minimum wage and overtime violations and unlawful retaliation after a live-in nanny requested more pay and less hours shortly before the Covid-19 pandemic started. Florez moved to the United States in August 2018, and even though she was unauthorized to work, she posted an advertisement in classifieds in Miami, Florida for work as a nanny. Ms. De La Cruz responded to the ad and hired Florez to be a live-in nanny starting in September 2018. Ms. De La Cruz wanted help to watch her child because she frequently joined her husband at his work, which was at a night life venue. Florez claims that she was also hired to assist with "the daily housework" [D.E. 31-1, pg. 18:20-22], but Defendants assert that any cooking and cleaning she did was in the ordinary course of being a roommate with Defendants.

---

[1]   The Honorable Kathleen M. Williams referred the motions to the Undersigned for disposition on May 3, 2021. [D.E. 40].

Florez was paid $450 per week for the work and slept at Defendants' residence in her own room at least six nights a week for the first year. Her schedule fluctuated week to week, but she was paid the same salary regardless of the amount of time she worked that that week. While Defendants did not keep records of the hours she worked, Ms. De La Cruz and Florez communicated frequently through WhatsApp chat to discuss Florez's daily tasks. Florez contends that she worked up to 72 hours a week and Defendants claim that she averaged around 20 hours per week.

In September 2019, Florez communicated to Ms. De La Cruz that her pay was too low for all the work she did. Ms. De La Cruz thus increased her pay to $500 per week and hired a housekeeper to help clean their home at least once a week. According to Florez, the hiring of the cleaning person "represented a little less work" for her. Also in September 2019, Florez took off two weeks from work to take care of her soon to be husband after he was hospitalized with an injury. Florez continued to take 1-2 hours off on certain days to care for her husband, but her weekly salary of $500 was never reduced.

Shortly thereafter, Florez started staying with her new husband a few nights a week in an apartment close to Defendants' residence. In February 2020, Florez received permission from Ms. De La Cruz to completely move out of the Defendants' residence. Florez also requested a formal schedule and to work less hours around this time. In response, Ms. De La Cruz allowed Florez to start working reduced hours and allegedly prepared a formal schedule for her. However, in mid-March, at the same time the government recommended quarantining due to Covid-19, Florez's

3

employment was suspended and she moved-in full-time with her husband. During her quarantine, Florez's building was trying to evict her and her husband, so she did not want to leave as she was concerned that she could not get back in. Florez was also worried about her car being towed, so Ms. De La Cruz allowed her to park it at Defendants' building. In April 2020, Florez's employment was officially terminated. Ms. De La Cruz did so by texting Florez that she was let go "due to the pandemic and family circumstances," that she lost her own job at a theatre, and that Defendants were moving. [D.E. 31-2, pg. 32].

On June 3, 2020, Florez filed her complaint in state court and Defendants removed it to this Court on July 6, 2020. [D.E. 1]. Florez brought nine causes of action against Defendants, including six counts for alleged violations of the minimum wage and overtime provision of the FLSA (Counts I-VI), as well three counts for retaliatory termination.

## II. LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *See Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, a court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not

5

be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

#### A. *Retaliatory Termination (Counts VII-IX)*

Defendants seek judgment in their favor on Counts VII-IX, each involving unlawful retaliatory termination of Florez's employment. In short, Defendants argue that Florez has failed to show that her employment was terminated because she requested a pay raise, help with cleaning, and a reduction in the number of hours she worked. In the alternative, Defendants contend Florez is not entitled to economic damages because she is an undocumented alien not authorized to work in the United States.

The FLSA prohibits an employer from discharging "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Informal complaints made to an employer may serve as a "complaint" for purposes of the FLSA. *See E.E.O.C. v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989) ("[U]nofficial complaints expressed by [employees] to their employer about unequal pay constitute an assertion of rights protected under the statute."); *Perez v. Anastasia M. Garcia, P.A.*, 701 F. App'x 938, 941 (11th Cir. 2017) (email requesting overtime pay was sufficient to put defendant on notice that defendant "should reasonably

6

understand the matter as part of its business concerns.") (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

Courts use "the familiar *McDonnell Douglas* framework" to analyze FLSA retaliation claims. *See Suchite v. Kleppin,* 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011) (quoting *Burnette v. Northside Hosp.,* 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004)). Under this framework, a plaintiff must show that: (1) she engaged in a protected activity under the FLSA; (2) she suffered an adverse action by her employer; and (3) a causal connection exists between her protected activity and the adverse action. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). To establish a causal connection, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999)). A "close temporal proximity between the statutorily protected activity and the adverse employment action" can meet the burden of showing causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *See Brungart*, 231 F.3d at 798-99). "But mere temporal proximity, without more, must be '"very close."' *Id.* (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).

If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to come forward with a legitimate non-retaliatory reason for the adverse employment action. *Id.* If this burden is met, the burden shifts back to the

plaintiff to demonstrate that the proffered non-retaliatory reason is a pretext for the termination.  *See Suchite*, 819 F. Supp. 2d at 1293.

We begin with Plaintiff's initial burden; to show that she engaged in a protected activity and that there is a casual connection between it and Ms. De La Cruz terminating her employment. Florez asserts that she engaged in protected activity when she "complained" about her low pay and cleaning duties in September 2019.  While this may constitute protected activity, Florez has failed to show a causal connection between it and the termination of her employment.  To begin with, Ms. De La Cruz acquiesced to the requests by increasing Florez's weekly compensation and hired a cleaning service to lighten Florez's workload.  Because of this, Florez is only relying on the temporal proximity between her requests and her termination to show a casual connection.  Thus, the date she made her requests and the date of her termination must be "very close."  *See Thomas*, 506 F.3d at 1364.  However, it was at least six months after her requests that Florez's employment was first suspended in March 2020.  This six-month gap clearly fails to meet the standard of "very close." *See Clark County Sch. Dist.,* 532 U.S. at 273 (three-month period insufficient); *Thomas*, 506 F.3d at 1364 (three to four-month period insufficient).

Florez's request to move-out completely and for reduced hours in February 2020 is a different story.  If we considered this request protected activity, the temporal proximately to her work being suspended in March 2020 is relatively close. Nonetheless, even if Florez established  a *prima facie* case of retaliation based on the close temporal proximity between her protected activity and her termination,

Defendants have offered a legitimate, non-retaliatory reason for her termination—that Florez lost her job due to the Covid-19 pandemic and that Defendants moved to Washington, DC a few months later.  It is now common knowledge that millions of people across the world lost their jobs when the Federal government recommended a two-week quarantine starting in March 2020, with most of them not regaining employment for several months.  This was especially true for professions that required close contact with other people, like nannies.

Florez has not come close to offering any evidence to rebut that the Covid-19 pandemic was not the reason she lost her job instead of her asking for reduced hours and wanting to move out.  Indeed, just a few days after Florez's request to work less hours in February 2020, Ms. De La Cruz took Florez out to celebrate her birthday as their relationship remained strong.  This friendly relationship was also evidenced by Ms. De La Cruz allowing Florez to park her car at her house even though her employment was suspended at the time.  And lastly, when asked if the February 2020 conversation regarding a reduction in hours had anything to do with her termination, Florez said "I don't think so."  [D.E. 31-2, pg. 53].

As a result, the retaliation claims fail as a matter of law.[2]  Therefore, Defendants' motion should be **GRANTED**.

---

[2]   We also address Defendants' alternative argument that someone not authorized to work in the United States cannot recover backpay.  This argument is unavailing.  "[U]ndocumented workers are 'employees' within the meaning of the FLSA and that such workers can bring an action under the act for unpaid wages and liquidated damages." *Patel v. Quality Inn*, 846 F.2d 700, 706 (11th Cir. 1988).  And this holding is still applicable in the Eleventh Circuit today.  *See Lamonica v. Safe*

**B.** *Undisputed Issues (FLSA Coverage, Ms. De La Cruz is an "Employer" under the FLSA, and Florez is an "Employee" under the FLSA)*

Plaintiff seeks judgment in her favor on FLSA coverage, that Ms. De La Cruz is an "employer" under the FLSA, and that Florez is an "employee" and not an independent contractor under the FLSA. Defendants do not challenge any of these positions. However, Defendants assert that none of them were ever under dispute, so Plaintiff's counsel only seeks judgment on them to increase their billable hours. Defendants thus contend these issues should be denied as moot. In reply, Plaintiff's counsel argues they had legitimate reasons to adjudicate the issues.

We find no reason why the Court should settle this argument regarding attorneys' fees at this stage of the action. For now, we thus recommend that the Court grant Plaintiff's motion for summary judgment on these issues to avoid any doubt that they are settled issues. But, Defendants have preserved their arguments if Plaintiff is ultimately the prevailing party and owed certain fees under the FLSA. And if Plaintiff's counsel lacked a valid reason to seek judgment on these issues, the amount of attorneys' fee owed to Plaintiff may be reduced accordingly.

**C.** *If Mr. De La Cruz is an "Employer" under the FLSA*

Plaintiff argues that in addition to Ms. De La Cruz, Mr. De La Cruz was an "employer" under the FLSA. Pursuant to the FLSA, "employers must pay employees minimum and overtime wages. *Olivas v. A Little Havana Check Cash*, Inc., 324 F.

---

*Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306 (11th Cir. 2013) ("For the reasons that follow, *Hoffman* is not clearly on point and therefore did not overrule *Quality Inn*.").

App'x 839, 844 (11th Cir. 2009) (citing 29 U.S.C. §§ 206, 207). An individual cannot be held "liable for violating the overtime provision of the FLSA unless he is an 'employer' within the meaning of the Act." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)).

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013). Whether an individual comes under the scope of this definition "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008).

To support that Mr. De La Cruz was Florez's employer, Plaintiff presents the following evidence: (1) Ms. De La Cruz requested that Florez make some peas via Whatsapp for Mr. De La Cruz to go with Ms. De La Cruz's shrimp and rice; (2) Mr. De La Cruz reprimanded Florez for not properly cleaning his shoes; (3) Mr. De La Cruz would ask Florez for something if he needed it; (4) Mr. De La Cruz was the lessor of the residence; and (5) Ms. De La Cruz had to speak to her husband to see if he agreed to hiring a cleaning service. This evidence falls well short of showing that it is undisputed that Mr. De La Cruz was Florez's employer under the FLSA.

To begin with, if Florez cooked as part of her work or just in the ordinary course of living with Defendants is in dispute. Ms. De La Cruz requesting that Florez cook

11

her husband peas as a side dish to her dinner may have nothing to do with Florez's employment duties. This could be simply roommates coordinating dinner plans. Mr. De La Cruz also denies asking his wife to make this request of Florez. Mr. De La Cruz also denies ever reprimanding Florez regarding his shoes. And the text messages between Ms. De La Cruz and Florez discussing the alleged incident is vague and ambiguous. The rest of the evidence presented by Florez is generic and or possibly irrelevant. Because the specific evidence concerning Mr. De La Cruz being an "employer" under the FLSA is sparse, and viewing all evidence and factual inferences in the light most favorable to Defendants, Plaintiff's motion for summary judgment seeking to establish Mr. De La Cruz as an "employer" under the FLSA should be **DENIED**.

### D. *FLSA's Minimum Wage Provisions*

Plaintiff next seeks to establish that Defendants violated the FLSA's minimum wage provisions. Congress enacted the FLSA to protect all covered workers from substandard wages and oppressive working hours. *See Barrenttine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a); *see also Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1309 (S.D. Fla. 2007) ("One of the primary purposes of the FLSA is to protect employees from substandard wages," with the general requirement that employers compensate employees with a statutory minimum rate for work performed). The law was designed to ensure that any employee covered under the law would receive "[a] fair day's pay for a fair day's work[.]" *Barrenttine,* 450 U.S. at 739. In other words, "[b]y establishing a floor for

wages and a ceiling for hours worked without overtime compensation, lawmakers attempted 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1311 (11th Cir. 2007) (quoting *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948)). To that end, "the statute requires payment of minimum wages and overtime pay, 29 U.S.C § 206, § 207, and gives employees deprived of these payments the right to receive them. 29 U.S.C § 216(b); *Maluvik v. Ameripark, LLC*, 694 F. App'x 705, 705 (11th Cir. 2017).; *see also Lyon v. Whisman*, 45 F.3d 758,764 (3rd Cir. 1995) ("The substantive sections of the FLSA, narrowly focusing on the minimum wage rates and maximum working hours, bear out its limited purpose.").

To prevail on her minimum wage claim, Plaintiff must demonstrate that she worked overtime without compensation and Defendants knew or should have known of the overtime work. *See Allen*, 495 F.3d at 1314-15. Plaintiff concedes in her motion that the number of hours she worked per week is in dispute. She does so because the parties disagree on whether Florez was working during the time she was not watching the child and if the cleaning and cooking she did was part of her job duties or just part of her normal daily living.

Plaintiff, however, argues she is entitled to summary judgment because Defendants did not keep records of when she worked. This argument relies on the burden shifting framework used when there is an absence of written time records or

13

a written agreement that establishes the hours worked for a live-in employee. Under these circumstances, the employee has the burden "to prove that he/she has in fact performed the work for which she claims that she was improperly compensated." *See Turcios Montoya v. Herington*, 2014 WL 12536979, at *3 (S.D. Fla. Aug. 29, 2014) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Then, "the burden shifts to the employer to come forward with evidence of the precise amount of work performed." *Id.*

While this burden shifting framework applies to this case, this does not automatically establish that Florez was not paid minimum wage. In fact, the one case cited by Florez states the opposite. *See id.* ("In *Barraza*, this Court found that in the absence of records or a written agreement, the facts relevant to determining the compensable hours are highly disputed and, therefore, create a genuine issue of material fact which precludes the entry of summary judgment.") (citing *Barraza v. Pardo*, 985 F. Supp. 2d 1369, 1373 (S.D. Fla. Dec. 4, 2013)). Like *Turcios* and *Barraza*, there is no record of hours worked and number of compensable hours Florez worked are highly disputed, so entry of summary judgment must be precluded. It is up to the trier of fact to determine if Florez had any "down-time" while living with Defendants. Accordingly, Plaintiff's motion for summary judgment on the issue of minimum wage should be **DENIED**.

### E.     *Overtime Exemption*

Plaintiff also seeks summary judgment in her favor that her work for Defendants was not exempt from overtime. The FLSA requires an employer to pay

14

an employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). A plaintiff who has worked overtime without pay may bring a private FLSA action for damages. *See* 29 U.S.C. § 216(b). An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work. *See Allen*, 495 F.3d at 1314-15.

In general, the FLSA's overtime wage provisions do not apply to "any employee who is employed in domestic service in a household and who resides in such household[.]" 29 U.S.C. § 213(b)(21). However, "[e]mployees who work only temporarily, for example, for only a short period of time such as two weeks, for the given household are not considered live-in domestic service workers, because residing on the premises of such household implies more than temporary activity." 29 C.F.R. 785.23.

Here, Plaintiff argues she was a temporary live-in domestic employee from September 2019 until her employment ended in March 2020 because she ceased living with Defendants full-time during this period. The record, however, is rife with contrary evidence that shows Florez may have lived at Defendants' residence full-time up until March 2020. For example, the complaint and Florez's answers to interrogatories state that she lived with Defendants until March 2020. There is also no question that Florez's personal belongings were still in Defendants' residence as late as April 2020. In addition, Florez stated in her deposition that she stayed at

Defendants' residence after September 2019 whenever Defendants needed her to, which was at least 4-5 days a week. [D.E. 31-1, pg. 36:4-6]. And that she did not live with her husband full-time until she started quarantining due to the pandemic. [D.E. 31-2, pgs. 35-36]. Therefore, a jury must decide if Florez lived with Defendants full-time after September 2019, and Plaintiff's motion for summary judgment on this issue should be **DENIED**.

### F. *Setoff Compensation*

Last, Plaintiff contends Defendants are not entitled to setoffs for monies paid to her for vacation pay, pay received for time when Defendants were away, meals and lodging, or loans made to Florez that she did not repay. Defendants assert they only seek to offset a single $450 loan Ms. De La Cruz gave Florez that was not repaid. Setoffs may be appropriate in FLSA actions if they do not cause a plaintiff's wages to fall below the statutory minimum. *See Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1321 (S.D. Fla. 2005) (citing *Singer v. City of Waco, Tex.,* 324 F.3d 813, 828 n. 9 (5th Cir. 2003)).

According to Defendants, Florez only worked 20 hours the week the loan was made, so the potential $450 setoff would not cause Florez's wages to fall below the statutory minimum as she was already compensated $500 that week. Thus, because the number of hours Florez worked is in dispute, the setoff question is not appropriate for summary judgment. This is correct.

In other words, even if Florez paid back the $450 loan, she would still be compensated $500 that week (instead of $950), which is well above the statutory

minimum for 20 hours worked in a single week.  Now, if Florez can show she worked more than 52 hours that week (the number of hours where $500 for the week would be below the statutory minimum), then Defendants cannot offset the entire $450 loan.  Or it could be offset on a sliding scale.  In any event, we cannot determine if an offset is appropriate until the jury determines the number of hours Florez worked the week the $450 loan was due.  Accordingly, Plaintiff's motion for summary judgment on the issue of setoff compensation should be **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion for partial summary judgment [D.E. 30] should be **GRANTED** and Plaintiff's motion for partial summary judgment [D.E. 32] should be **GRANTED in part** and **DENIED in part**:

> A. Plaintiff's motion for judgment in her favor on FLSA coverage, that Ms. De La Cruz is an "employer" under the FLSA, and that Florez is an "employee" and not an independent contractor under the FLSA should be **GRANTED**.
>
> B. Plaintiff's motion on the remaining issues should be **DENIED**.[3]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual

---

[2]   To be clear, Plaintiff failed on every issue that Defendants' challenged and only succeeded on the issues in which Defendants were in agreement.

or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of July, 2021.

                                                      /s/ *Edwin G. Torres*
                                                      EDWIN G. TORRES
                                                      United States Magistrate Judge