**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-22766-Civ-WILLIAMS/TORRES

DIANA FLOREZ,

      *Plaintiff*,

v.

MARTHA DE LA CRUZ and
FERNANDO DE LA CRUZ, individually,

      *Defendants.*

_____/

**ORDER**
**ON PLAINTIFF'S MOTION FOR FEES AND COSTS**

      This matter is before the Court on Diana Florez's ("Plaintiff") motion for attorney's fees and costs against Martha De La Cruz and Fernando De La Cruz (collectively, "Defendants"). [D.E. 102]. Defendants responded to Plaintiff's motion on August 18, 2022, [D.E. 103], to which Plaintiff replied on August 26, 2022. [D.E. 104]. Therefore, Plaintiff's motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1] On November 30, 2022, the Honorable Kathleen M. Williams referred Plaintiff's motion for fees and costs to the Undersigned Magistrate Judge for disposition. [D.E. 106].

# I.  BACKGROUND

Plaintiff filed this action on June 3, 2020, in Florida state court and Defendants removed it to federal court on July 6, 2020, [D.E. 1], based on federal question jurisdiction.  Plaintiff's Complaint alleged violations of the Fair Labor Standards Act ("FLSA") arising from alleged unpaid wages and retaliatory actions by Defendants.  Specifically, Plaintiff claimed that she worked for Defendants as a live-in domestic worker and nanny from September 2018 to March 2020.  Specifically, Plaintiff alleged that, during this time, she worked an average of ninety-six (96) hours per week and that Defendants paid her below the minimum wage mark: $450 per week from September 2018 through September 2019, and $500 per week from September 2019 through March 2020.  Plaintiff also alleged that Defendants did not pay her the time and a half overtime rate prescribed by the law for all hours worked over forty (40) hours a week.  Accordingly, Plaintiff sought to recover damages for unpaid minimum wages and overtime from Defendants.

On June 3, 2022, the parties proceeded to a three-day jury trial where the jury found that Defendants failed to pay Plaintiff her overtime wages as required under the FLSA.  The jury delivered a verdict that was partially favorable to the Plaintiff, finding that Plaintiff was properly paid minimum wages during the pertinent years but concluding that Defendants owed Plaintiff $6,000 for unpaid overtime wages for the years 2019 and 2020.  [D.E. 97].  The Court then entered judgment in Plaintiff's favor for a total sum of $12,000, which included $6,000 in liquidated damages.  [D.E. 108].  The Court also determined that Plaintiff was the

prevailing party with respect to the FLSA overtime claim only and reserved ruling on Plaintiff's motion for reasonable attorney's fees and costs. *Id.*

## II.  ANALYSIS

Plaintiff's motion seeks $59,437 in attorney's fees and $11,431.25 in costs. Defendants oppose the motion and take issue with Plaintiff's fees and costs calculations because, in their view, (i) lead counsel Ms. Saavedra's hourly rate should be reduced from $310 to $275; (ii) several of the fees billing entries are for clerical tasks that should not be accounted for; (iii) Plaintiff is improperly seeking fees and costs for work done against Workforce Solution ("Workforce"), a party that was dismissed from the case pursuant to a joint stipulation; (iv) Plaintiff is improperly seeking to recover excessive and not-taxable costs; (v) and Plaintiff did not prevail on her minimum wage and retaliation claims against Defendants and the damages awarded to her represent only 10% of the damages requested at trial and 48.22% of what she originally requested in her discovery responses. [D.E. 103 ¶¶ 1–8].  As such, Defendants request that the Court reduce Plaintiff's fees and costs to a more reasonable amount.

### A.    *Plaintiff's Motion for Costs*

Under Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute.  A strong presumption exists in favor of awarding costs.  *Id.*  A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.[2]  *See Crawford Fitting Co. v. J.T.*

---

[2] The following costs are permitted under 28 U.S.C. § 1920:
    (1)   Fees of the clerk and marshal;

*Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920). "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000). The court should not take into consideration the relative wealth of the parties, as it would undermine the presumption that Rule 54(d)(1) creates in favor of the prevailing parties. *Id.*

Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the requested costs fall outside the scope of this statute or are otherwise unreasonable. *See, e.g., E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000) (affirming denial of motion for certain costs that were not timely objected to before the district court because the "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal"; "[this Rule applies] to a party's failure to object to witness fees") (citations omitted); *Katz v. Chevaldina,* 127 F. Supp. 3d 1285, 1292 (S.D. Fla. 2015) (the burden lies with the challenging party to show that deposition costs not recoverable as unrelated or unnecessary to any issue in the case).

---

    (2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

    (3)  Fees and disbursements for printing and witnesses;

    (4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

    (5)  Docket fees under section 1923 of this title;

    (6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

4

Here, Plaintiff requests $11,431.25 in costs under § 1920, including $406 in filing fees, $25 in issuance of summons costs, $230 in service of process costs, $1,519.25 in transcript costs, $492 in deposition court reporting services fees, $6,270 in translation costs, $2,340 in interpreter costs, and $89 in copies of trial documents fees.  [D.E. 102-2].[3]  Defendants challenge these costs, taking specific aim at the articulated costs associated with: (i) issuance of summons and service of process with respect to Workforce; (ii) photocopying trial materials; and (iii) the translation of text messages to be used at trial.  [D.E. 103 at 5–6].

### *(1)      Service of Summons and Subpoena*

Starting with Defendants objections to the issuance of summons and service of process costs ($25 and $230, respectively), we find that these claims lack merit. "Pursuant to [Section] 1920(1), fees of the clerk and marshal may be taxed as costs. This includes service of process costs." *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007) (alteration and internal quotations marks omitted) (citing *EEOC v. W & O Inc.*, 213 F.3d 600, 623 (11th Cir. 2000)).  "The Eleventh Circuit has held that private process server fees may be taxed under [S]ections 1920(1) and 1921, so long as the taxable costs of the private process server are limited to the statutory fees authorized by [S]ection 1921." *Flagstar Bank, FSB v. Hochstadt*, 2010 WL 1226112, at *9 (S.D. Fla. 2010) (footnote omitted) (citing *W & O Inc.*, 213 F.3d at 624).  "This is currently $65 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses." *Cont'l 332 Fund,*

---

[3] As a threshold matter, we note that Plaintiff's bill of costs amount is off by $60, as a sum of the listed billables actually amounts to $11,371.25, not $11,431.25.

*LLC v. Hilz*, 2020 WL 6595061, at *3 (M.D. Fla. 2020) (citing 28 C.F.R. § 0.114(a)(3)). "[I]nvoices submitted to substantiate these expenses must 'provide sufficient or intelligible details as to what exactly was paid for.'" *Mid-Continent Cas. Co. v. JWN Constr., Inc.*, 2019 WL 8402872, at *3 (S.D. Fla. 2019) (alteration omitted) (quoting Cortez v. Tom Thumb Food Stores, Inc., 2013 WL 12383258, at *4 (S.D. Fla. 2013)).

As reflected in the bill of costs and the invoices attached to it, the costs associated with effectuating service of process on the multiple, and necessary, parties and non-parties in this case clearly fall within the statutory fee limits authorized by Section 1921. As the invoices clearly indicate, the costs incurred in serving Defendants were of $25 per person, while the costs incurred in serving the non-parties corporate entities were of $45 per entity. Further, to the extent that Defendants claim that any costs associated with service of process on Workforce are improper under the terms of the stipulation of dismissal, this argument is mooted by virtue of the fact that the bill of costs plainly indicates that Plaintiff listed these fees as non-billable expenses. [D.E. 102-2 at 1]. Accordingly, no reduction is warranted on this basis.

### (2)    *Translation and Copying Costs*

Plaintiff seeks $89 in costs associated with the copying of documents for trial ($15 for trial preparation documents and $74 for a trial binder with exhibits). Because these types of costs are expressly covered by Section 1920, we agree with Plaintiff that she is entitled to recover these costs. *See* 28 U.S.C. § 1920(4)

(providing that "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable).  As Plaintiff notes in her reply, the printing and copying of these materials was necessary in light of the fact that Defendants failed to maintain proper time records, and we discern no basis in Defendants generalized and conclusory rebuttal to conclude otherwise.

On the other hand, we partly agree with Defendants' objection to the $6,270 translation fee listed in Plaintiff's bill of costs.  Defendants allege, and Plaintiff does not contest, that the vast majority of these translations were not used at all during trial.  Instead, Plaintiff argues that she was left with no option but to translate the entire universe of text messages (approximately 360 pages of materials) after Defendants refused to stipulate to the introduction of isolated, and partial, translations into the record.  Yet, a review of the conferral email attached by Plaintff does not cure the impropriety of this excessive and mostly unnecessary expense.  [D.E. 104-1].

For instance, Plaintiff fails to explain why, despite knowing about the existence of these messages for many months, it was reasonable for her to wait until less than a week before trial to confer with Defendants about their introduction into the record.  Had Plaintiff exercised a proper degree of diligence in conferring with Defendants on this issue, with sufficient time to properly address any objections by Defendants to partial translations, then the need to engage a last-minute translator and incur costs related to a rushed translation service on the eve of trial would have

been avoided.  *See Osorio v. Dole Food Co.*, No. 07-22693-CIV, 2010 WL 3212065, at *11 (S.D. Fla. July 7, 2010), *report and recommendation adopted sub nom*. Osorio v. Dole Food Co., No. 07-22693-CIV, 2010 WL 3212062 (S.D. Fla. Aug. 12, 2010) ("The undersigned agrees . . . that the 'rush[]' . . . fees are not recoverable. Consequently, the undersigned finds that an award of translation costs must exclude . . . fees for expedited translation and delivery charges."). *See also* [D.E. 102-2 at 28] (invoicing the job as "Translation RUSH-381 pgs").  In light of these facts, we consider a fifty percent (50%) reduction of Plaintiff's translation costs to be warranted.  Thus, Plaintiff's motion for costs is **GRANTED in part** and **DENIED in part** for a total cost award of **$8,236.25**.

### B.  *Plaintiff's Motion for Fees*

The next issue we address is Plaintiff's request for $59,437 in attorneys' fees. In determining an appropriate fee award, we employ the lodestar method.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.  We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee").  This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed."  *Hensley*, 461 U.S. at 433.  If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."  *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably

expended.  *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).  Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained."  *Norman*, 836 F.2d at 1302.  Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation."  *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  *ACLU of Ga. v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award.  *See Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit.  *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters.  *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to

prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### (1)    The Reasonable Hourly Rate

The first step is to consider the reasonable hourly rate. This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted). Here, the relevant legal community is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974). The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and

experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value." *Loranger,* 10

F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).[4]

Here, Plaintiff requests an hourly rate of $310 for Nathaly Saavedra, the lead

counsel in this case, and $380 for each of the two partners in her firm involved in

this FLSA litigation, Juan J. Perez and Roberto J. Gonzalez. The attorney's fees

ledger attached to Plaintiff's motion reflects that Ms. Saavedra's time accounts for

the overwhelming majority of billable hours in the case, while Mr. Perez only billed

for trial-related work. *See* [D.E. 102-1]. Mr. Gonzalez's hours were computed as

non-billables and Defendants do not raise any objection vis-à-vis his work.

Defendants do not dispute the fees of Mr. Perez. Rather, they submit,

halfheartedly, that it is unreasonable to pay for the fees of Mr. Perez, whose

participation in the litigation was limited to the trial phase of the case. As to

Ms. Saavedra, Defendants challenge her fee and request that this Court reduce it to

---

[4] The 12 *Johnson* factors are as follows:
    (1) the time and labor required;
    (2) the novelty and difficulty of the questions;
    (3) the skill requisite to perform the legal service properly;
    (4) the preclusion of other employment;
    (5) the customary fee;
    (6) whether the fee is fixed or contingent;
    (7) the time limitations imposed by the client or circumstances;
    (8) the amount involved and the results obtained;
    (9) the experience, reputation and ability of the attorneys;
    (10) the undesirability of the case;
    (11) the nature and length of the professional relationship with the client; and
    (12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

$270 per hour.  Based on our review of the supporting documentation, the nature of this case, and our knowledge and experience regarding rates in FLSA cases in this legal community, we find that the hourly rates are reasonable.

Beginning with Ms. Saavedra, as lead counsel, she was the lawyer in charge of doing the lion's share of the work at every single stage of this protracted FLSA litigation, from the pleading and discovery phases to the trial and post-trial stages of the case.  Based on her leading role in this matter, and her level of experience with FLSA cases (she was admitted to the Florida Bar in 2015), we find that an hourly rate of $310 is appropriate here.  *See Correa v. McBayne's Inv.*, LLC, No. 11-21210-CIV, 2011 WL 13362476, at *3 (S.D. Fla. Aug. 1, 2011), *report and recommendation adopted*, No. 11-CV-21210, 2011 WL 13362475 (S.D. Fla. Aug. 17, 2011) (approving $300 hourly rate for lawyer with eight years' experience in an FLSA case that did not involve significant motion practice and did not go to trial); *Reppert v. Mint Leaf, Inc.,* No. 11–21551–CIV, ECF No. 114 (S.D. Fla. Jan. 31, 2013) (awarding $375.00/hour to lead attorney and $325.00/hour to senior associate in FLSA case); *Capdevila v. S. Miami Rehab.*, Inc., No. 11-24005-CIV, 2012 WL 13134212, at *1 (S.D. Fla. Dec. 5, 2012) (holding that hourly fee of $325.00 was reasonable for Plaintiff's lead counsel in an FLSA case).

As to the involvement of Mr. Perez in the trial phase of this case, nothing in Defendant's four-line argument against his fees, nor in the record, lead us to conclude that his participation in this litigation was unreasonable.  As noted above, out of the total 219 hours of work recorded in Plaintiff's fees ledger, Mr. Perez only

billed for 20 hours of work, all in connection with trying the case before the jury. Defendants provide no legal basis for their halfhearted objection to Mr. Perez's involvement, and we find none. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.") (citation omitted).   Accordingly, no fees reduction is warranted on this basis.

### (2)   The Reasonable Number of Hours Expended

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended.  The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*." *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).  The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.  *See A.C.L.U. of Georgia*, 168 F.3d at 428.  If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary." *Id.* at 428.  As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended

on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303. Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record." *Id*. at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Defendants take issue with the number of hours expended because Plaintiff's attorneys engaged in unrecoverable clerical, duplicative, and unnecessary tasks. Defendants further contend that a fee award should be substantially reduced because it is not commensurate with Plaintiff's recovery at trial. Defendants claim, in other words, that the lodestar amount is disproportionate to the jury award and that the fees requested must be reduced accordingly. For these reasons, Defendants request that any fee award be significantly reduced.[5]

We begin with Defendants' argument that Plaintiff's fees be subject to an across-the-board reduction because the $6,000 jury verdict is disproportionate to the fees requested by Plaintiff in the early stages of the case and at trial. At this stage of the process and under the circumstances, we find this argument unpersuasive. Indeed, Defendants' argument is nothing new as it has been presented before and repeatedly rejected. In *P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019), for example, the Eleventh Circuit confronted the same argument where a jury awarded a plaintiff $6,308 and the district court awarded the attorneys $116,129.56 in fees. The Eleventh Circuit affirmed the district court's fee

---

[5] Defendants claim that Plaintiff's fees should be reduced by 90% to reflect the reality that Plaintiff obtained a verdict for $6,000, which represents only 10% of the total amount of damages she requested at trial. [D.E. 103 at 10].

award because "whatever intuitive appeal [that the] proportionality argument may have is undercut by *City of Riverside v. Rivera*, 477 U.S. 561, (1986), in which the Supreme Court rejected a proportionality argument for attorneys' fees awarded under 42 U.S.C. § 1988." *P&K Rest. Enter., LLC*, 758 F. App'x at 851.

The Eleventh Circuit reasoned that a proportionality argument was even weaker in an FLSA case because the statute renders attorneys' fees mandatory under the statute.  *Compare*  29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)), *with* 42 U.S.C. § 1988(b) ("[T]he court, *in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." (emphasis added)); *see also James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007) ("Fee awards . . . should not simply be proportionate to the results obtained by the Plaintiff."); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (noting that it is not uncommon for fee requests to exceed the judgment in FLSA cases); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1165 (11th Cir. 2017) (reversing a 92% loadstar reduction because "the amount of the reduction was explicitly based on the application of a proportional modifier representing the degree of success YPPI enjoyed at trial. Both the Supreme Court and our circuit precedent prohibit this sort of 'cash register approach' to the award of attorney's fees.").  The Eleventh Circuit's decision thus directly forecloses Defendants' argument in this case because –

without any other specifics as to how the fees are excessive vis-à-vis the jury verdict – "[a] lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

On the other hand, Defendants' claim that several of the billable fees in Plaintiff's ledger are connected to a retaliation claim that was devoid of any merit and, a such, are subject to reduction, is well taken. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis [;r]ather, . . . it may [] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added).

As this Court held in its summary judgment order dismissing Plaintiff's retaliation claim, Plaintiff chose to pursue a cause of action that found no basis on the facts at hand: "when asked if the February 2020 conversation regarding a reduction in hours had anything to do with her termination, Florez said 'I don't think so.'" [D.E. 46 at 9]. We thus find it appropriate to deduct from Plaintiff's fees the hours of work she incurred opposing Defendants' motion for partial summary judgment on this factually baseless claim; namely, entries 219–220, 224–227, 231, 233, and 235–236, which amount to a reduction of $3,627 in fees. *See Donaldson v. O'Connor*, 454 F. Supp. 311, 316 n.3 (N.D. Fla. 1978) (entitlement to attorney's fees "does not mean that attorneys' fees should be awarded for . . . the pursuit of meritless claims." (citation omitted). [D.E. 102-1 at 20–22].

Likewise, we agree with Defendants that additional adjustments in Plaintiff's fees are warranted because several of the billable entries reflect either clerical, or excessive and unnecessary work that is not recoverable under the law.   *See Azam-Qureshi v. The Colony Hotel, Inc.*, 540 F. Supp. 2d 1293, 1299 (S.D. Fla. 2008) (reduction warranted where tasks billed for were "either of a clerical nature, unnecessary, duplicative, and/or excessive.") (footnotes immitted).  This court has repeatedly held that "[s]imple administrative tasks that could be completed by a secretary are not recoverable because they do not require a lawyer's skill and training." *Ramos v. Arba Constr. Inc.*, No. 20-25192-CIV, 2021 WL 4482659, at *2 (S.D. Fla. Aug. 25, 2021), *report and recommendation adopted*, No. 20-25192-CV, 2021 WL 4480169 (S.D. Fla. Sept. 30, 2021) (noting that "scheduling, telephone

calls, faxing, mailing, filing, and e-filing," are nonbillable tasks).  As Defendants rightly point out, Plaintiff's fees ledger reflects a significant amount of time spent sending emails, receiving materials, making phone calls, scheduling meetings, reviewing court orders, filing documents, checking the docket, and other clearly clerical tasks.  Further, the ledger also includes tasks that were excessive or unnecessary.  Thus, the following entries will be deducted from Plaintiff's final fee's award: 42, 64, 66, 68, 69, 71, 73, 75, 86, 102, 135, 136, 138–143, 151–154, 159, 160–162, 164, 165, 167–169, 174, 175, 183–184, 201–203, 249, 251, 252, 255, 257, 259, 273, 343, 344, 346–348.  This reduction amounts to a sum of $2,830.50.

Having determined that some of Plaintiff's fees should be subject to an hour-by-hour reduction, the net lodestar calculation, based on the number of compensable hours times the reasonable hourly rates charged, yields a presumptive fee award of $52,979.50.

### *(3)    Lodestar Adjustment*

We must finally determine whether this final lodestar amount should be reduced.  A reduction in fees is warranted if the record shows a demonstrable lack of success for the prevailing party.  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 1987) (reducing the lodestar by 90% for lack of success, even though plaintiff obtained an admission of liability); *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997) (reducing fees by 88%, even though plaintiffs received approximately $49,000 in damages).

18

In analyzing this question, we note that many cases dealing with lodestar reductions share an important characteristic: the plaintiff almost always needlessly persists or prolongs the litigation by making outrageous or grossly unreasonable settlement demands. *See, e.g., Dillard,* 213 F.3d at 1356 ("Thus, in short, the plaintiffs' work had no articulable value, even as part of a war of attrition, after the City accepted the possibility of a fully remedial plan in June 1994."); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir. 1987) (67% reduction justified because jury awarded $30,000 damages but plaintiff demanded more than $2 million throughout the course of litigation); *James,* 489 F. Supp. 2d at 1352 ("In this case, in light of the fact that the Plaintiff initially sought to recover over $600,000 and ultimately prevailed on a jury verdict of $1,746.81, plus a liquidated damages award, for a total award of $3,493.62, the Court finds that this case merits a reduction for limited recovery."). The litigation stances in these cases ultimately caused unnecessary work to be performed, which justified a reduction in the lodestar to account for the unnecessarily litigious strategies of the prevailing party.

Here, such a showing has not been made. There is no showing, for instance, that an early Rule 68 offer was made that rendered all the work thereafter unreasonable or excessive. Further, and as Defendants acknowledge, Plaintiff's $6,000 recovery on her successful overtime claim represents approximately 50% of the estimates she articulated in her Statement of Claim and discovery responses with respect to this specific cause of action. [D.E. 12; 103-1]. Nor has any evidence been presented that Plaintiff made extortionist settlement demands throughout the

case that unreasonably extended the litigation.  In this manner the record here presents a stark contrast with others that have penalized extortion-like fee requests with lodestar adjustments. *Cf. Walker v. Iron Sushi LLC*, 752 F. App'x 910, 915 (11th Cir. 2018) ("[I]t is clear that a rejected settlement is an appropriate factor to consider in assessing the reasonableness of a request for attorney fees."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying fee request and admonishing counsel's strategy of "shaking down" defendants "with nightmarishly expensive litigation" and avoidance of "prompt out-of-court resolution" for the sole purpose of larger attorney fee award).

Defendant nevertheless argues that a 90% lodestar reduction is warranted because Plaintiff only obtained a verdict for $6,000.00, representing 10% of the amount she requested at trial ($60,000.00).  The problem with this argument is that we do not judge lodestar calculations based on what the lawyers argue during the trial.  It is more objective and reliable to measure the level of success based upon what notice was provided before the trial as to what damages were being claimed, which is a factor that any defendant may then consider and rely upon in deciding whether or not to settle.  By that measure, this case does not come close to warranting a 90% reduction in the lodestar, or frankly any reduction at all.  Defendant concedes that Plaintiff's unliquidated overtime damages that were claimed before trial were $12,441.00.  The ultimate recovery represents 50 percent of that claimed amount and almost 100% of that amount as liquidated damages.  And though she did also demand minimum wage damages plus retaliation lost

wages, those elements of her claim were rejected by the jury. So, at bottom, Plaintiff clearly obtained a material recovery on a substantial part of her case but did not achieve a completely successful outcome.

Based on this set of circumstances, four considerations inform our analysis. To begin with, there is no doubt that a reasonable fee award is not merely a mechanical calculation based on the amount demanded against the amount received. Such a proportionality calculation would yield, for instance, only a fee award of about $6,400 in this case (given a six percent recovery on the overtime claim from the amount sought before trial to the final award after trial). But Eleventh Circuit caselaw strongly rejects such an approach because statutes like the FLSA cannot be properly enforced by limiting fee awards in this manner. *See P&K,* 758 F. App'x at 850 (rejecting defense theory that $118,894.20 is an excessive fee award for an FLSA case with a $6,308 jury verdict).

Second, strict proportionality aside, a trial court should take into account the disparity between the ultimate judgment awarded and the amount of fees incurred. This "fee-to-judgment ratio" was an issue, for instance, in the *P&K* case just as it is here. 758 App'x at 850 ("there is room to quibble with the district court's decision to award a fully compensatory fee here. The fee-to-judgment ratio is large."). And it is also particularly relevant where some of the plaintiff's claims were rejected in the case (like the minimum wage and retaliation claims that the jury rejected). *Id.* (retaliation claim was dismissed at summary judgment).

21

Third, in adjusting a lodestar one should pay careful attention to whether a successful plaintiff is being penalized twice based on the level of success achieved. In other words, if that level of success was a factor in the reduction of "unnecessary" hours at arriving at the lodestar, then that same factor should not be dispositive in further reducing the lodestar. *See, e.g., Martinez v. Hernando Cnty. Sheriff's Off.*, 579 F. App'x 710, 715 (11th Cir. 2014) (affirming 75% reduction in lodestar based on limited success at trial because district court did not impermissibly "double count" by relying on that same factor in determining the lodestar figure).

And, fourth, the assessment of the level of success must take into account the overall fairness of the outcome and the importance of enforcing federal law. It is fair, for instance, to acknowledge a limited level of success based on an amount awarded, but that cannot be divorced from the court evaluating the time and effort that the plaintiff was forced to undertake in getting there. *See, e.g., Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 805 (11th Cir. 2020) ("Plaintiffs' success should not be measured solely by the size of their recovery. Rather, the district court considered it important and beneficial to the public that the FLSA was successfully enforced") (affirming $488,875 fee award for FLSA plaintiffs that settled shortly before trial for three percent of the original amount claimed in part because defendants did not concede liability until the end of the case).

Applying these factors here, we reject a strict proportionality award as the Eleventh Circuit counsels us. Instead, a fairer measure of the case is a ten-to-one ratio of fees to damages awarded that would yield a fee award of $120,000, which is

far greater than the amount sought in this fee application. *See Martinez,* 579 F. App'x at 715 (affirming lodestar adjustment that netted FLSA plaintiff a ten-to-one ratio of fees to damages award). The Court has already taken into account the unsuccessful retaliation claim by excising time entries focused on that claim from the lodestar calculation. Hence it is unfair to double-dip by relying on the failed retaliation claim in the lodestar adjustment process. And, finally, the Court's judgment is informed by its review of the whole record that shows that time and effort had to be undertaken to defeat Defendants' principal defenses to the overtime claim. The jury ultimately sided with Plaintiff on that score and thus attorneys' fees were necessarily incurred to achieve the material result that Plaintiff's counsel obtained in the case after a three-day trial.

In short, the lodestar presumptively represents a reasonable fee award in this case. That amount, $52,979.50, represents about a five-to-one-ratio of fees to the amount of the judgment awarded to Plaintiff. And no showing has been made that Plaintiff rejected reasonable settlement demands or unnecessarily prolonged the litigation by making settlement impossible. There is thus little basis in this record for the Court to make further adjustments to the presumptive fee. The amount awarded here is a fair fee award given the record presented.

### III.   CONCLUSION

For the foregoing reasons:

A. Plaintiff's motion for costs is **GRANTED in part** and **DENIED in part** and Plaintiff shall recover $8,236.25 as taxable costs in the action;

B. Plaintiff's motion for fees is **GRANTED in part** and **DENIED in part** and Plaintiff is entitled to recover a total fee award of $52,979.50. [6]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of March, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[6] The motions are adjudicated by Order for administrative purposes. The parties retain the right to appeal any aspect of this Order under Rule 4(a) *and* may also seek *de novo* review for that purpose. Failure to file an appeal with the District Judge precludes the filing of any appeal to the Court of Appeals and will operate as the parties' consent to entry of judgment on this Order.